ests of the Government and decide the questions involved. Such conditions do not insure an impartial determination of the case. (3) If the decision on the appeal is in favor of the Government, the taxpayer has the right to test the correctness of the decision in the courts, but if the decision is in favor of the taxpayer, the action of the bureau is final and the correctness of the decision can never be tested in the courts. It is contended that this condition results in the decision of most doubtful points in favor of the Government. (4) The taxpayer is usually forced to come to Washington for the hearing on his appeal, an expensive and burdensome procedure. [Id., pp. 7 and 8.]

To meet the objections given above, the committee recommends that there be established a Board of Tax Appeals, * * * to hear *all appeals from the assessment of additional income, war-profits, excess-profits*, and estate taxes. * * * Both the Government and the taxpayer will appear before the Board and present their cases, and the decision of the Board will be final as to the amount of tax to be paid. (Italics ours.) [Id. p. 8.]

The bill provides for the establishment of a Board of Tax Appeals to which a taxpayer may appeal prior to the payment of *an additional assessment of income, excess-profits*, war-profits, or estate taxes. * * *

Under the existing law a taxpayer prior to the payment of his tax may appeal to the Commissioner, who has established the committee on appeals and review to determine these appeals for him. * * *

Under the provisions of the proposed bill creating a Board of Tax Appeals the taxpayer may, prior to the payment of the *additional assessment of income, war-profits, excess-profits, or estate taxes, appeal to the Board of Tax Appeals* and secure an impartial and disinterested determination of the issues involved. In the consideration of the appeal both the Government and the taxpayer will appear before the Board to present their cases, with the result that each member of the Board will sit solely as judge and not as both judge and advocate. * * * *This proposal meets all the objections that have been raised as to the existing system* and at the same time provides for a flexible and informal procedure which will permit the board to determine expeditiously the cases brought before it on appeal. (Italics ours.) [Senate Report 398, pp. 8 and 9.]

We are of opinion that the language employed in the Revenue Act of 1924 confers on this Board jurisdiction of appeals involving deficiencies arising out of the application by the Commissioner of the provisions of sections 327 and 328 of the Revenue Acts of 1918 and 1921, as well as deficiencies arising out of a failure by the Commissioner to apply those provisions in proper cases. The motion of the Solicitor on behalf of the Commissioner is denied.

---

## Appeal of DONALSONVILLE OIL MILL.        Docket No. 51.

Submitted November 17, 1924; decided December 11, 1924.

*James L. Respess, C. P. A.*, for the taxpayer.

*Willis D. Nance, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

The above appeal was heard on depositions submitted and oral argument by the representative of the taxpayer and counsel for the Commissioner.

### FINDINGS OF FACT.

The taxpayer is a Georgia corporation doing business in Donalsonville, Ga. It filed its return for the fiscal year ended June 30, 1920. In that return it claimed a deduction on account of debts

ascertained to be worthless and charged off within the taxable year in the sum of $10,191.02.

Subsequent to the close of its fiscal year the books of the taxpayer were audited and on or about January 1, 1921, the auditor directed that accounts in the above-mentioned sum be charged off, which was thereupon done as of June 30, 1920, the entry actually being made on or about January 1, 1921.

Thereafter, the Commissioner, in the audit of the taxpayer's return, allowed a deduction on account of debts ascertained to be worthless and charged off in the taxable year in the sum of $3,786.55, and disallowed as such a deduction the sum of $6,404.47. From the determination of a deficiency in tax for the fiscal year ending June 30, 1920, based upon the said disallowance, the taxpayer brings its appeal.

DECISION.

The determination of the Commissioner is approved.

---

**Appeal of S. B. CHURCHILL.**                    **Docket No. 166.**

A sale of real estate on which $8,500 cash is paid of a total purchase price of $15,000, the remainder of purchase price secured by a second mortgage and payable $100 monthly, is not a sale under the installment plan and a gain therefrom is taxable in full in the year in which the sale is made.

Submitted December 1, 1924; decided December 11, 1924.

*South Trimble, Esq.,* for the taxpayer.

*Willis D. Nance, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

This appeal was heard on December 1, 1924, on depositions taken on behalf of the taxpayer and oral argument by counsel for the taxpayer and the Commissioner.

FINDINGS OF FACT.

During the year 1919, the taxpayer sold a house and two lots in the city of Clarksdale, Miss., for a stated consideration of $15,000. This house was acquired by the taxpayer subsequent to March 1, 1913, at a total cost, including improvements, of $7,915.10. Payment was made on account of the purchase price in the sum of $8,500 cash and $6,500 in notes secured by a second mortgage. The notes were payable in equal monthly installments over a period of 65 months subsequent to the date of purchase, and bore interest. The $8,500 cash paid was secured by placing upon the property a first mortgage with a third party, to which mortgage the taxpayer subordinated his mortgage to secure the sum of $6,500 above mentioned. By accepting the terms of the sale as above outlined, the taxpayer considered that he sold the property for a great deal more than it was worth. The notes so received as part of the purchase price